# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

Dr. Tinsley Ariana Taylor Makayla Saramosing,    )
)
Plaintiff,    )
)
Vs.    )
)
Kevin Corbett,    )
)
As Cabinet Secretary of the Oklahoma State    )
Department of Health,    )
)    Case #: 5:2|-CU-o|/5ᒎ
Defendant,    )
)
&    )
)
Keith Reed,    )
)
In His Capacity as Interim Commissioner of Health    )
of the Oklahoma State Department of Health,    )
)
Defendant,    )
)
)
Kelly Baker "Baker",    )
)
Deputy Registrar of Vital Records,    )
Oklahoma State Health Department,    )
)
Defendant,    )
)
&    )
)
Tim Tipton,    )
)

**In His Capacity as Commissioner of Public Safety of** )
**the Oklahoma Department of Public Safety,** )

**Defendant** )

_____ )

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT:

Plaintiff, a woman who is transgender born in Oklahoma, brought this case against three Defendants, Oklahoma State Department of Health officials, to obtain a birth certificate with her true/changed legal names and sex/gender marker that reflect her true sex/gender without notations as such plastered all over them without her consent. Plaintiff also brings this suit against four defendants, namely #s 1-3 as noted above, and also the Oklahoma Department of Public Safety, because all four (4) Defendants illegally require/force permanently and irreversibly sterilizing hormone therapy and surgery (a.k.a. genocide) upon the transgender community in order to have names and gender markers which adequately reflect whom they really are. Plaintiff is also asking this Court to strike down Title 63 O.S. § 1-321 as illegally, arbitrarily and capriciously applied to Plaintiff and the transgender/non-binary/gender-fluid/gender non-conforming community by Defendants 1-3, as well as Defendants' personal discriminatory policies toward the transgender/nonbinary, gender-fluid/gender non-conforming communities. Neither Title 63 O.S. § 1-321 as-applied by Defendants nor Defendants' personal policy preferences is justified by

any legitimate—much less compelling—government interest, and both violate Plaintiff's rights as noted below:

## United States Supreme Court Cases:

*Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995)*

*Bolling v. Sharpe*, 347 U.S. 497 (1954)

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020)

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954)

*Craig v. Boren*, 429 U.S. 190

*Evancho v. Pine-Richland Sch. Dist.* Civil No. 2:16-01537

*Frontiero v. Richardson,* 411 U.S. 677 (1973)

*Highmark Inc. v. Allocate Health Mgmt. Syst., Inc.*, 572 U.S. 559 (2014)

*Lawrence v. Texas*, 539 U.S. 558 (2003)

*Levy v. Louisiana*, 391 U.S. 68 (1968)

*Michael H. v. Gerald D.*, 491 U.S. 110 (1989)

*Miller v. Johnson*, 515 U.S. 900 (1995)

*Obergefell v. Hodges*, 576 U.S. 644 (2015)

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992)

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973)

*United States v. Virginia*, 518 U.S. 515 (1996)

*Weinberger v. Weisenfeld*, 420 U.S. 636 (1975)

*Skinner v. Oklahoma*, 316 U.S. 535 (1942)

## United States Court of Appeals Cases:

*Doe v. Boyertown Area School District*, 897 F.3d 518 (3d Cir. 2018)

*Donatelli v. Mitchell*, 2 F.3d 508 (3d Cir. 1983)

*Grimm v. Gloucester Cty. Sch. Bd*, -- F.3d -- 2020 WL 5034430

*Ray v. Himes*, 2:18-cv-00272-MHW-CMV (2020)

*Zzyym v. Blinkin (formerly Zzyym v. Pompeo, Zzyym v. Tillerson & Zzyym v. Kerry,* 1:15-cv-02362-RBJ, (2018).

## United States District Court Cases:

A.H. ex rel. Handling v. Minersville Area School District, 408 F.Supp.3d 536 (M.D. Pa. 2019) (holding that excluding a transgender girl from girls' school restrooms states a sex discrimination claim under Title IX and the Equal Protection Clause of the Constitution).

[THE ISSUANCE OF A BIRTH CERTIFICATE CONSTITUTES A HEALTH SERVICE (Oklahoma State Department of HEALTH). HENCE, DEFENDANTS 1-3 ARE IN VIOLATION OF PLAINTIFF'S RIGHTS].

Brown v. Dept. of Health and Hum. Servs., No. 8:16DCV569, 2017 WL 2414567 (D. Neb. June 2, 2017) (holding that discrimination against transgender people constitutes sex discrimination that is subject to heightened scrutiny under the Equal Protection Clause of the Constitution).

**[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']**

Cruz v. Zucker, 195 F.Supp.3d 554 (S.D.N.Y. Jul. 5, 2016) (holding that discrimination on the basis of gender identity is sex discrimination under Section 1557 of the Affordable Care Act).

**[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']**

**[THE ISSUANCE OF A BIRTH CERTIFICATE CONSTITUTES A HEALTH SERVICE (Oklahoma State Department of HEALTH). HENCE, DEFENDANTS 1-3 ARE IN VIOLATION OF PLAINTIFF'S RIGHTS).**

Doe v. Massachusetts Department of Correction, et al., No. CV 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018) (holding that "where a State creates a classification based on transgender status, the classification is tantamount to discrimination based on sex" under the Equal Protection Clause).

**[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']**

Finkle v. Howard Cty., 12 F. Supp. 3d 780 (D. Md. 2014) (holding a claim of discrimination based gender identity constitutes sex discrimination under Title VII).

**[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]**

F.V. v. Barron, 286 F. Supp. 3d 1131 (D. Idaho March 5, 2018) (finding the practice of denying transgender individuals' applications to change the sexes listed on their birth certificates violated Equal Protection Clause).

> **[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]**

*Lorelied v. Lance Frye, M.D. et. al* (2020)

*Relf v. Weinberger*, 372 F. Supp. 1196 (D.D.C. 1974)

Stone v. Trump, 280 F. Supp. 3d 747 (D. Md. Nov. 21, 2017) (discrimination against transgender people is gender-based discrimination under the Equal Protection Clause of the Constitution).

> **[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.']**

U.S. v. S.E. Okla. State Univ., No. CIV–15–324–C, 2015 WL 4606079 (W.D. Okla. July 10, 2015) (holding that **harassment**, health insurance exclusion, and termination based on gender transition constituted sex stereotyping discrimination under Title VII).

> **THE ACTS BELOW CONSTITUTE HARASSMENT, EVEN THOUGH THIS IS NOT AM EMPLOYMENT DISCRIMINATION CASE, BECAUSE UNLAWFULLY OUTING PLAINTIFF AND THOSE LIKE HER AGAINT THEIR WILL LEADS TO DISCRIMINATION IN THE WORKPLACE, SCHOOLS, ETC.:**
>
> **[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]**

Tronetti v. Healthnet Lakeshore Hosp., No. 03–CV–0375E, 2003 WL 22757935 (W.D.N.Y. Sept. 26, 2003) (holding claim of discrimination based on gender transition constitutes sex discrimination under Title VII).

**THE ACTS BELOW CONSTITUTE HARASSMENT, EVEN THOUGH THIS IS NOT AM EMPLOYMENT DISCRIMINATION CASE, BECAUSE UNLAWFULLY OUTING PLAINTIFF AND THOSE LIKE HER AGAINT THEIR WILL LEADS TO DISCRIMINATION IN THE WORKPLACE, SCHOOLS, ETC.:**

**[DEFENDANTS 1-4 FORCED PLAINTIFF AND THOSE LIKE HER TO UNDERGO IRREVERSIBLE, PERMANENTLY STERILIZING HORMONES AND SURGERY PRIOR TO CHANGING HER NAMES/GENDER ON HER LEGAL DOCUMENTS; DEFEDANTS 1-3 CONTINUE TO BULLYPLAINTIFF AND THOSE LIKE SHE BU OUTTING THEM AS TRANSGENDER AGAINT THEIR WILL, HAVING "SEPARATE BUT EQUAL" BIRTH CERTITIFATES, ETC.]**

## United States District Court for the Western District of Oklahoma – now *Chief Judge David L. Russell's Ruling:*

*Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88 (W.D. Okla. 1983)

## Appellate Court of Illinois Case:

*Hobby Lobby Stores, Inc., v. Meggan Sommerville and the Human Rights Commission,* 2021 IL App (2d) 190362, No. 2-19-0362, Charge Nos. 2011-CN-2993 and ) 2011-CN-2994

Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. Feb. 29, 2000) (holding that the Gender Motivated Violence Act (GMVA) applied to targeting of a transgender person).

[DEFENDANTS' ACTIONS CONSTITUTE VIOLENCE]

## West Virginia Southern District Court:

Hersom et al v. Crouch et al, 2:21-cv-00450 (2021)

## Constitutional & Other Legal Provisions:

U.S. Const. Amendments I, V, VIII, IX, XIV, Right to Informational Privacy, Due

Process

Americans With Disabilities Act (ADA)

Civil Rights Act of 1964

Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act

1976 Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. §1988

Title 18, U.S.C., Section 245 – Federally-Protected Activities

Title 18, U.S.C. 242 – Deprivation of Rights Under Color of Law

Title 18 U.S.C., Section 241 – Conspiracy Against Rights

California Gender Recognition Act

New York Gender Recognition Act

## Secondary Sources:

Aime M. Grant, et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, Nat'l Ctr. For Transgender Equality & National Gay & Lesbian Task Force 1 (2011), http://www.transequality.org/sites/default/files/docs/resources/NTDS_Rep ort.pdf

Christina Richards et al., *Non-binary or Genderqueer Genders*, 28 Int'l Rev. Psychiatry 95 (2016)

Jessica A. Clarke, *They, Them, and Theirs*, 132 Harv. L. Rev. 894 (Jan. 2019)

## CONSTITITUIONAL AND STATUTORY PROVISIONS:

**U.S. Const. Amend. I**: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

**U.S. Const. Amend. V**: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation*.

**U.S. Const. Amend. VIII**: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

**U.S. Const. Amend. IX**: The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

**U.S. Const. Amend. XIV**: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## STATEMENT OF THE UNDISPUTED FACTS:

The Oklahoma Health Department, Vital Statistics Division (run by Defendants 1-3) ("OSDH" or "OPH") administers birth records, which includes the control of any change or correction. The Oklahoma State Department of Public Safety ("OSPS" or "OPS") (run by Defendant 4) issues drivers' licenses for persons of driving age who reside in the State of Oklahoma.

## I.  OSDH's Policy Has Harmed and Continues to Harm Plaintiff & Those Like Plaintiff

Dr. Tinsley Ariana Taylor Makayla Saramosing, was born in Oklahoma City, Oklahoma. Defendants did not permit Plaintiff to amend her names and gender/sex markers on her birth certificate or driver's license, unless she first underwent permanently and irreversibly sterilizing hormone therapy and surgery. Even so, Defendants 1-3 continue to out Plaintiff against her will by maintaining notations to her names and sex/gender marker on her birth certificate for anyone who requires it to clearly see.

Plaintiff has repeatedly had to disclose her birth certificate as a routine part of her life—each time forcibly outing her as transgender, causing her fear and humiliation, forcing her to endorse a message with which they emphatically disagree, and putting her at grave risk of physical harm.

Per her previously-submitted Exhibits, Plaintiff has been forced to out herself against her will at the university level and when applying for gainful employment – especially during the tumultuous economic times of Covid-19. She is currently applying to have her wife, Vivien Keefe, receive her permanent residency card via a fiancée visa application and petition for adjustment of status, and once again Defendants 1-3 via the notations of amendments they have illegally and cruelly forced upon Plaintiff's birth certificate. Plaintiff was also denied use of multiple gyms/restrooms, because her birth certificate showed that she was transgender.

Also per her previously-submitted Exhibits, Plaintiff also remains extremely apprehensive about traveling abroad and getting murdered or put to death for being transgender, getting thrown into a prison with men, trying to adopt, seeking medical care, has been fired from employment for being transgender, has suffered social and familial isolation from so-called friends, families and strangers, has been repeatedly sexually assaulted, has been the butt of repeated public and private ridicule, and much more, because her birth certificate has notations of her amendments to her names and sex/gender marker.

All Defendants seem to do is proclaim that the policies and laws are either "their right" to discriminate with as they please, or that they "did not choose" the content of the law itself and essentially contend that Plaintiff's situation is "not their fault". This shows their extreme indifference, lack of empathy, sadism and

sociopathic-like approach causes Plaintiff and those like her tremendous harm. Each time she must explain the discrepancies on her birth certificate, people treat her like a zoo specimen. It is a similar story for each Oklahoma-born person who is transgender and who cannot obtain an accurate birth certificate.

I.  **OKSDH's & OKDPS's Personal Policies are Facially Discriminatory Toward People who are Transgender Born and/or Living in Oklahoma, & Title 63 O.S. § 1-321 is Discriminatory As-Applied Against Humans who are Transgender:**

Oklahomans may petition OKSDH to change or update various birth certificate fields for a host of reasons. For example, adoptive parents may change their child's birth certificate to replace the birth parents' name with the adoptive parents' name. Title 63 O.S. § 1-321. If someone obtains a legal name change, that person may change his/her/their birth certificate to reflect that. Title 63 O.S. § 1-321. Some of the reasons that OKSDH may change or correct a birth certificate are listed explicitly in Oklahoma's statutes. E.g., Title 63 O.S. § 1-321 (allowing any changes "to correct errors"). Some reasons for changing a person's birth certificate are expressly prohibited by Oklahoma law. Title 63 O.S. § 1-321 (prohibiting issuance of birth record information for purposes of "deception"). Still other reasons are neither explicitly provided for nor prohibited by statute.

For the aforementioned, none of Defendants 1-4 impose any "special prohibitory requirements" for changing their birth certificates or drivers' licenses.

However, when it comes to correcting the gender/sex markers of persons who are transgender who were born in Oklahoma, Defendants 1-4 at both the OKSDH and OKDPS suddenly forcibly impose special permanent, irreversibly sterilizing hormone therapy prior to receiving any changes.

Even if people who are transgender satisfy their arbitrary, capricious and illegal litmus test requirements like segregationists did with poll taxes and literacy tests before non-Whites gained more *de jure* equality, Defendants 1-3 continue to discriminate and harm Plaintiff and those like her by keeping amendments to the changes to the names and gender/sex marker on the birth certificate itself – and they *do not do this* with *cisgender* persons who make changes. Thus, Defendants 1-4 are not neutral whatsoever, and on its best day Title 63 O.S. § 1-321 is unconstitutionally void for vagueness.

If Defendants are truly "neutral" as they claim they and Title 63 O.S. § 1-321 are, then why impose these special requirements upon a protected class of individuals like Plaintiff? There is no law that requires a court order to change a gender marker, nor are Defendants or judges permitted by law to require permanent, irreversibly sterilizing hormones and surgery in violation of all of the case laws, constitutional amendments, and federal and state statutes Plaintiff has listed over and over throughout her case, prior to making changes to the names and sex/gender markers of those who are transgender. Defendant 4/OKDPS does not even require a

court order to change the gender marker of person who are transgender; that's just "how they do things" and it truly causes serious and permanent harm to people who are transgender/non-binary/gender-fluid and gender non-conforming.

## LAW & ARGUMENT

Summary judgment is proper unless "a reasonable [factfinder] could return a verdict for [the non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The uncontroverted evidence proves that Defendants' Policies violates Plaintiffs' constitutional rights of speech, privacy, and equal protection as a matter of law, among numerous others. Defendants have produced no evidence to create any genuine issue of material fact, nor to demonstrate how the Policy could *Case: 5:21-cv-01152, Defendants' Response & Motion to Dismiss* survive either the strict scrutiny applied to Plaintiffs' privacy and compelled speech claims, or the heightened scrutiny applied to their equal protection claim, among other claims.

## I. Defendants' Policy & Title 63 O.S. § 1-321 Violate Plaintiffs' Due Process Right to Privacy

Defendants' Policies force Plaintiff and those like her to disclose that she/they are transgender every time she/they must produce their birth certificates and drivers' licenses. The undisputed evidence shows that these disclosures put Plaintiff and those like her at risk of bodily harm and reveal highly sensitive, intimate information

about her/them, in violation of their Fourteenth Amendment due process right to privacy.

**A. The Policy Compromises Transgender People's safety.** Plaintiffs have a constitutional right to keep information private to preserve their "personal security and bodily integrity." Kallstrom v. City of Columbus, 136 F.3d 1055, 1062 (6th Cir. 1998). In denying Defendants' motion to dismiss, this Court will likely rule that "Plaintiff has alleged facts which, accepted as true, suggest that forced disclosure of Plaintiffs' transgender status upon presentation of her birth certificate and by committing genocide upon Plaintiff and those like her by forcing her to become permanently and irreversibly sterilized prior to updating her name or gender/sex marker places her 'personal safety and bodily integrity in jeopardy.' Love v. Johnson, 146 F. Supp. 3d 848, 855 (E.D. Mich. 2015).

Plaintiff has now produced undisputed evidence showing that the Title 63 O.S. § 1-321 and Defendants' own Policies have compromised her safety and the safety of those like her and will continue to endanger her and others like her. Defendants have offered absolutely nothing whatsoever to counter any of it, because they know they are clearly in the wrong and have attempted to desperately cling to procedural laws only in an attempt to prevent Plaintiff from bringing the suit in the first place when they know she has every right and just cause to do so.

"Courts across the United States have explicitly acknowledged the general hostility and violence affecting the transgender population for at least the last decade." Order, ECF No. 47 at 15. Based on a 2015 survey, 36% of transgender people who showed an ID that did not match their sex presentation were verbally harassed, denied benefits or service, asked to leave, or assaulted. National Center for Transgender Equality, 2015 U.S. Transgender Survey: OState Report 3 (2017), https://bit.ly/2QyKNHF. Killings of transgender people, especially transgender

7 women of color, for being transgender remain high across the United States, including Oklahoma. See National Coalition of Anti-Violence Programs, A Crisis of Hate: A Report on Lesbian, Gay, Bisexual, Transgender and Queer Hate Violence Homicides In 2017, https://bit.ly/2tOlhoQ; see also, e.g., BJ Colangelo, More than 15 Percent of this Year's Transgender Homicides Have Happened in Cleveland, Cleveland Scene, June 27, 2018, https://bit.ly/2QIGWYJ

## B. The Policy Reveals Plaintiff's Intimate Personal Information.

The Policy also infringes on Plaintiff's right to control the disclosure of information "of an intimate nature which define[s] significant portions of our personhood." Bloch v. Ribar, 156 F.3d 673, 685 (6th Cir. 1998). Plaintiff has produced undisputed evidence of the intimate, personal, and important nature of information about their transgender status, and how the exposure of this information,

against her will and in a way that contradicts their core sense of self, has humiliated her. The psychological toll of being both outed and misgendered by one's own birth certificate can be devastating. Routine daily events that most people take for granted are fraught with humiliation and repeated threats of serious bodily harm for transgender people with incorrect identity documents.

One of Plaintiff's expert witnesses plans to testify about a patient who died by suicide after having to show a document with the wrong sex listed. Likewise, a 2015 study showed that having an identity document with the correct sex prevented more suicide attempts by transgender people than did treating patients with anti-depressants (48-2x-E-2018). Plaintiff's expert witness will also testify that some people who are transgender withdraw socially to avoid the fear and humiliation of using inaccurate identity documents: "[t]hey stay in a bad job that they don't like because it's too scary to try to apply for a better job, they don't go back to school, they don't register to vote, [and] they don't request services that they might be entitled to . . . ." **(Plaintiff's Proffered Expert Witness Testimony)**

These circumstances are precisely why such sensitive information is constitutionally protected from disclosure. See Bloch, 156 F.3d at 684; Powell v. Schriver, 175 F.3d 107, 111-12 (2d Cir. 1999). Privacy violations infringe on a fundamental right and are thus subject to strict scrutiny. Kallstrom, 136 F.3d at 1064.

## II. OKSDH's and OKSDPS's Policies and Title 63 O.S. § 1-321 Violate Plaintiff's Right to Equal Protection

Under the Law State actions based on transgender status and based on sex receive heightened scrutiny under the Equal Protection clause. The Policy is based on transgender status and sex, and it violates Plaintiffs' rights to equal protection.

### A. The Policy is Based on Transgender Status and Sex

The Defendants' Policies and Title 63 O.S. § 1-321 discriminate against Plaintiff on the basis of her transgender status and on the basis of sex/gender. Defendants' Policies categorically denies sex marker corrections to transgender people, unless they undergo permanent and irreversible hormone therapy and surgery. Defendants 1-3 are neither required or authorized by any law to secure a court order prior changing the gender/sex marker of a person who is transgender. Likewise, no judge is legally authorized to grant or deny such an order, yet Defendants 1-3 categorically require it anyway.

Defendant 4, Tim Tipton with the OKDPS, likewise without any law or authority to justify it, requires people who are transgender to submit a "letter of sterilization and genocide/extermination" from a medical doctor, prior to grudgingly changing the gender marker for an individual who is transgender.

Under Defendants' self-appointed Policies, sex/gender markers on Oklahoma birth certificates are assigned based on one thing and one thing only: the appearance of external genitals at birth at an age when they are too young to consent. Id. 57:21-58:20. For cisgender people, this is typically an accurate proxy for their true sex; for transgender people, it is not. Moreover, when a cisgender person requests to change the sex marker on their birth certificate, whether it is wrong because of a mistake or because of atypical genitalia at birth, OKSDH allows the change. But when a transgender person makes the same request, OKSDH As a result, all cisgender people born in Oklahoma may obtain a birth certificate that identifies their sex accurately and that they can use without sacrificing their safety or privacy. Transgender people born in Oklahoma are denied this on the basis of sex/gender and transgender status.

Title 63 O.S. § 1-321 is discriminatory as-applied by Defendants, because it requires notations of amendments on birth certificates and yet does not account for the specific rights, needs and protections of people who are transgender. Title 63 O.S. § 1-321 is merely a state law, and the federal case laws, federal statutes and constitutional amendment protections Plaintiff has repeatedly proffered trump it. Likewise, Title 63 O.S. § 1-321 is unconstitutionally void for vagueness, because it makes no mention of changing one's gender marker and thus leaves it

subject to abuse by Defendants' bigoted, discriminatory, harmful agendas and beliefs.

Defendants have relegated transgender people—and only transgender people—born in Oklahoma to two choices: forgo use of a birth certificate at all, which often means giving up employment, marriage, benefits, and other opportunities; or use a birth certificate that reveals their transgender status, contradicts their sense of self, humiliates them, compromises their health, and puts them in danger of bodily harm.

## B. The Policy is Subject to Heightened Scrutiny.

Heightened scrutiny is required where the state targets a class that (1) has been "historically subjected to discrimination," (2) has a defining characteristic bearing no "relation to ability to perform or contribute to society," (3) has "obvious, immutable, or distinguishing characteristics," and (4) is "a minority or politically powerless." Windsor v. United States, 699 F.3d 169, 181 (2d Cir. 2012), aff'd on other grounds, 133 S. Ct. 2675 (2013) (internal quotation marks omitted). All these indicia are present for transgender people.

First, "[t]here is no denying that transgender individuals face discrimination, harassment, and violence because of their transgender identity." Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ., 858 F.3d 1034, 1051 (7th Cir. 2017); Ex. E at ¶ 44 ("An abundance of research establishes that

transcender people suffer from stigma and discrimination."); see also Ettner Dep. 23:22-24:21; 228:5-230; Ex. F at ¶ 31; Gorton Dep. 206:21-209:3. Plaintiffs' experiences illustrate that reality: they have all experienced some form of discrimination, harassment, or threat of violence because of their transgender identities. E.g. Ray Dep. 110:4-111:16, 112:4-21, 114:1-19, 117:7-121:7, 125:6-128:13; Breda Dep. 49:19-51:9, 52:19-55:25; Argento Dep. 45:1-9, 95:23-97:25, 125:22-126:15; Doe Dep. 117:5-118:14, 123:24-125:16.

Secondly, a transgender person is no less capable of contributing value to society than a cisgender person. (E.g. Adkins v. City of New York, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015)). Third, as multiple courts have found, transgender people share common immutable characteristics. Their gender identities are core to their personhood and differ from the sex assigned based on their appearance at birth; these things cannot be changed. (E.g., Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1119 n.8 (N.D. Cal. 2015); see also Ex. E at ¶¶ 20, 22-25; Ex. F at ¶ Case: 2:18-cv-00272-MHW-CMV Doc #: 69 Filed: 01/16/20 Page: 13 of 22 PAGEID #: 2709 12 37; Gorton Dep. at 167:13-20, 206:3-5). Finally, stigma and lack of representation have caused a status quo in which transgender people have very little political power. See Adkins at 140. As transgender people satisfy every criterion of a suspect or quasi-suspect class, discrimination against them is subject to heightened scrutiny.

Additionally, discrimination based on transgender identity is necessarily discrimination on the basis of sex, and thus it receives heightened scrutiny for that additional reason. (E.g., Equal Emp't Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc., 884 F.3d 560, 575 (6th Cir. 2018), cert. granted; Barnes v. City of Cincinnati, 401 F.3d 729, 739 (6th Cir. 2005); Smith v. City of Salem, 378 F.3d 566, 573-75 (6th Cir. 2004); Glenn v. Brumby, 663 F.3d 1312, 1319- 20 (11th Cir. 2011)). "[A]ll gender-based classifications . . . warrant heightened scrutiny." United States v. Virginia, 518 U.S. 515, 555 (1996) (quotations omitted). Here, Defendants' Policy explicitly differentiates based on sex and inflicts harm on transgender people. Defendants have adduced no evidence demonstrating anything but a "vague, speculative, and unsubstantiated" interest supporting their Policy, and have not even attempted to demonstrate the Policy is appropriately tailored to achieve any state interest (5:21-CV-01152 - *Defendants' Response to Plaintiff's Petition & Motion to Dismiss, Defendants' Response to Plaintiff's Response & to Motion to Dismiss)*.

## III. Oklahoma's Policy Compels Speech in Violation of the First Amendment

Throughout their lifetime, every Oklahoma-born person must show their birth certificate at various times to prove the basic facts of who they are. OKSDH has taken the ideological position that transgender people should be forever

designated the sex assigned to them based on stereotypes about their genital appearance at birth, rather than their actual sex. This indeed is an ideological position. The state has disingenuously juxtaposed the term "sex," which it argues designates only the record of a child's perceived genitals at birth, with "gender," a purportedly different concept that the birth certificate does not reflect. But in fact, in implementing the Policy, Defendants always used the terms "sex," "gender," and "gender identity" colloquially and interchangeably, understanding that as a practical matter, that field on an identity document indicates all three to the rest of the world. The state's attempt to distinguish these terms is a post hoc rationale that cannot help the Policy survive constitutional scrutiny. Case: 2:18-cv-00272-MHW-CMV Doc #: 69 Filed: 01/16/20 Page: 14 of 22 PAGEID #: 2710 13 entitled to its unfortunate point of view. Walker v. Texas Div. Sons of Confederate Veterans, 135 S. Ct. 2239, 2241 (2015). But OKSDH's Policy oversteps the First Amendment's boundary by forcing Plaintiff to endorse this message. Every time Dr. Tinsley Ariana Taylor Makayla Saramosing has to produce her birth certificate—to enroll in college, get a job, apply for professional licensure, or even to rent a car or drive in certain states—Oklahoma forces her not only to reveal that she is transgender, but to represent that she is really a "man". The compelled speech doctrine prohibits the state from forcing people to divulge facts they wish to keep private, and equally prohibits forced endorsement

of a state message. Plaintiff has proven these repeated speech compulsions, and the damage they inflict, with uncontroverted evidence.

## A. Oklahoma may not force Plaintiffs to endorse its viewpoint that transgender people are not who they know themselves to be.

"[C]ompelling individuals to speak a particular message" by making them "provide [others] a government drafted script" contrary to their own beliefs is a content-based imposition on the freedom of speech. (Nat'l Inst. of Family and Life Advocates v. Becerra, 138 S.Ct. 2361, 2371 (2018) ("NIFLA")). Using strict scrutiny, the Supreme Court has repeatedly invalidated information disclosure requirements that force people to endorse a state message unwillingly. (E.g., id.; Agency for Int'l. Dev. v. All. for Open Soc'y Int'l., Inc., 570 U.S. 205, 212 (2013); Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc., 487 U.S. 781, 797 (1988); Wooley v. Maynard, 430 U.S. 705, 714 (1977)). OKSDH's Policy forces Plaintiff to convey to others the state-mandated message that they are not the sex she knows herself to be. The Policy expresses an ideology that OKSDH holds: that a transgender person's sex should only be evaluated based on the sex typically associated with their external genitalia at birth, regardless of their gender identity, genetic differences transgender persons have from cisgender persons as shown in Plaintiff's exhibits, etc.). Plaintiff, of course, hold the opposite view, central to her identity: that she is the sex she know herself to be. This too is a protected message,

(e.g., Doe v. Bell, 754 N.Y.S.2d 846, 851 (Sup. Ct. N.Y. Co. 2003), but the state censors it on birth certificates.

It may be the state's prerogative, as a matter of First Amendment law, to express its position that transgender people should not be regarded according to their true sex. Walker, 135 S. Ct. at 2241. What the state may not do is force Plaintiff to endorse that message by disclosing Oklahoma's opinion about her sex to others each time she produces her birth certificate. Id. at 2246; see also NIFLA, 138 S. Ct. 2361. "When speech is compelled ... individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . . ." Janus v. Am. Fed'n of State, Cty., and Mun. Emps., 138 S. Ct. 2448, 2464 (2018). The coercion here forces Plaintiffs publicly to betray their most central convictions: their own identity.

## B. Oklahoma may not force the disclosure of Plaintiff's transgender status.

In addition to forcing Plaintiffs to endorse the state's viewpoint at the expense of expressing their own, Defendants' Policy forces unwanted disclosure of Plaintiff's transgender status. Plaintiff's experiences demonstrate the severe risk of harm that involuntary disclosure imposes on transgender people. Plaintiff, her numerous exhibits, and proposed expert witnesses have/will amply demonstrated/will demonstrate this, and Defendants have not contested it.

The First Amendment entitles Plaintiffs to keep their transgender status private because under compelled speech jurisprudence, "[t]he right to eschew association for expressive purposes Case: 2:18-cv-00272-MHW-CMV Doc #: 69 Filed: 01/16/20 Page: 16 of 22 PAGEID #: 2712 15 is likewise protected." Janus, 138 S. Ct. at 2463 (citing Roberts v. United States Jaycees, 468 U.S. 609, 623 (1984)); Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal., 475 U.S. 1, 12 (1986). Defendants may not force Plaintiffs to disclose unwanted facts any more than unwanted viewpoints, see Riley, 487 U.S. at 797, especially when those facts put Plaintiffs at risk of harm upon disclosure. The First Amendment has long protected the need for people to keep their memberships in vulnerable groups anonymous because of fear of bodily harm. NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 462 (1958). And the harm caused by compelled speech "takes on an added dimension" where, as here, the privacy of intimate information is at stake—"[f]or also fundamental is the right to be free . . . from unwanted governmental intrusions into one's privacy." Stanley v. Georgia, 394 U.S. 557, 564 (1969). In Ms. Ray's words, "[t]he harm is that the State of Ohio shouldn't force me to out myself every time that I have to present a legal document and then I get the looks, the whispers, the generalized humiliation that I get after presenting [it]." Ray Dep. 161:5-10; see also 121:5-7 ("Q. You think that the disclosure of your private information to the group is harm? A. I don't think, I know it is"); 159:15-20.

This intrusion causes Plaintiff harm at each disclosure and chills her participation in public life. "Forcing disclosure of transgender identity chills speech and restrains engagement in the democratic process in order for transgender[] [people] to protect themselves from the real possibility of harm and humiliation…[this] also hurts society as a whole by depriving all from the voices of the transgender community." Arroyo Gonzalez, 305 F. Supp. 3d at 333.

Finally, the violation in forcing this particular speech is intensified here, because the state subjects only transgender people to its compulsion, "le[aving] unburdened those speakers whose messages are in accord with its own views." NIFLA, 138 S. Ct. at 2378 (citing Sorrell v. IMS Health Inc., 564 U.S. 552, 580 (2011)). The state's speech compulsion does not touch those in Case: 2:18-cv-00272-MHW-CMV Doc #: 69 Filed: 01/16/20 Page: 17 of 22 PAGEID #: 2713 16 the majority—Oklahoma-born cisgender people who agree with and fit the sex on their identity documents. The "curiously narrow subset of speakers" that the Policy targets makes it even more suspect under the compelled speech doctrine. NIFLA, 138 S.Ct. at 2377. Defendants demonstrate no compelling interest in, nor tailored approach to justify, this First Amendment intrusion.

## IV. The Policy Fails Any Level of Scrutiny

Because the Policy infringes on Plaintiffs' fundamental right to privacy and freedom of speech, it is subject to strict scrutiny. Because the Policy infringes on

Plaintiff's right to equal protection, it is also subject to heightened (at least intermediate) scrutiny. But even if the Policy were subject only to rational basis review, it would still fail.

# A. Defendants have Offered No Evidence of any Compelling or Important Government Interest for Creating and Maintaining the Policy.

Under heightened scrutiny, Defendants must demonstrate that their "classification [] substantially serve[s] an important governmental interest today.'" Sessions v. Morales-Santana, 137 S. Ct. 1678, 1690 (2017) (internal citations omitted) (emphasis in original). Post-hoc rationalizations cannot survive. See United States v. Virginia, 518 U.S. 515, 533 (1996). And it is OKSDH's burden to prove that it actually attempted to use less intrusive alternatives to meet its goals. McCullen v Coakley, 573 U.S. 464, 494 (2014). Under strict scrutiny, OKSDH's Policy must be narrowly tailored to achieve a compelling interest, and must not be over or under inclusive. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993).

Defendants have produced no evidence that the Policy was implemented to serve any state interest. At best, OKDSH has articulated post-hoc rationales, with no evidence that it tailored its Policy to achieve any of them. The sole reason OKSDH has offered for instituting its Policy is to, ". . . Maintain records of [people whom we

forcibly assigned the wrong gender based only upon genitalia at their time of birth when they were unable to consent], and we want to forever show the world the grave, harmful mistake we made." OKSDH produced no evidence about why it reached that interpretation, whether it considered any alternatives, or why it rejected such alternatives. Instead, it maintains that any reason, and any evidence of any reason, are privileged, waiving any ability to rely on those reasons in this litigation. (New Phoenix Sunrise Corp. v. Comm'r, 408 F. App'x 908, 919 (6th Cir. 2010), quoting In re Lott, 424 F.3d 446, 454 (6th Cir.2005) ("'[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. The attorney-client privilege cannot at once be used as a shield and a sword'"); ODH Dep. 102:11-108:23, 163:14-170:1, 178:21-181:6. Even if, contrary to this Court's ruling that nothing in Oklahoma's statutes requires the Policy, OKSDH's reinterpretation of state law were accurate, compliance with state law is not a defense for violating rights protected by the U.S. Constitution. (Brown v. Entm't Merchants Ass'n, 564 U.S. 786, 799 (2011)).

Besides its unexplained reinterpretation of state law, OKSDH has only alluded to post-hoc support for its Policy: preventing fraud and keeping historical records or maintaining statistical information. (5:21-CV-01152 - *Defendants' Response to Plaintiff's Petition & Motion to Dismiss, Defendants' Response to Plaintiff's Response & to Motion to Dismiss)*. But OKSDH has produced no evidence that any

of these considerations actually motivated its decision to prevent transgender people from obtaining birth certificates that accurately reflect their sex. Id. Nor has OKSDDH produced any evidence showing the Policy actually serves these purposes, or that it is narrowly tailored to achieve them.

**Defendants' Policy fails even rational basis review.**

Even under rational basis review, Defendants' justifications fall short. OKSDH has not identified and cannot identify any legitimate interest rationally related to the Policy (5:21-CV-01152 - *Defendants' Response to Plaintiff's Petition & Motion to Dismiss, Defendants' Response to Plaintiff's Response & to Motion to Dismiss)* In fact, however, nothing in the relevant statutes actually precludes corrections to the sex field of a birth certificate because a person is transgender in the absence of permanently irreversibly sterilizing hormone therapy or surgery (Title 63 O.S. § 1-321). Plaintiffs have taken it upon themselves to do it just for fun because "they can", and because no one has ever tried to stop their illegal activity. And OKSDH has not produced evidence that the Policy does anything but undermine any goal it may have. Courts in Alaska, Idaho, Michigan, and Puerto Rico, among many others have all held that policies barring transgender people from obtaining identity documents with the correct sex lack adequate justification. See Arroyo Gonzalez v. Rossello Nevares, 305 F. Supp. 3d 327, 333 (D.P.R. 2018); F.V. v. Barron, 286 F. Supp. 3d 1131, 1142 (D. Idaho 2018); Love v. Johnson, 146 F. Supp. 3d 848, 856

(E.D. Mich. 2015); K.L. v. State, Dept. of Admin., Div. of Motor Vehicles, No. 3AN-11-05431 CI, 2012 WL 2685183, at *6-8 (Alaska Super. Ct. Mar. 12, 2012).

Firstly, Defendants suggest that birth certificates are "historical document[s]" with a "snapshot" of "statistical information," but they allow many kinds of amendments that render a birth certificate wholly useless to confirm facts at birth—including changes of paternity, parentage after adoptions, subjects' names, and even sex markers for certain people (Title 63 O.S. § 1-321). OKSDH also admits that the public policy reason to permit changes to this "historical document" is to let people use birth certificates for contemporaneous identity confirmation—a reason that would apply at least as strongly to transgender people without forcibly and permanently sterilizing them and outing them against their will/causing grievous and malicious harm. (Title 63 O.S. § 1-321).

Secondly, OKSDH stretches credulity in arguing that an interest in fraud prevention or law enforcement justifies the Policy (5:21-CV-01152 - *Defendants' Response to Plaintiff's Petition & Motion to Dismiss, Defendants' Response to Plaintiff's Response & to Motion to Dismiss)*. Because the Policy forces people to use Oklahoma birth certificates containing inaccurate/forced notations of amendments made & causing the applicants to become forcibly and permanently sterilized/exterminated)conflicts with all (5:21-CV-01152 - *Defendants' Response to Plaintiff's Petition & Motion to Dismiss, Defendants' Response to Plaintiff's*

*Response & to Motion to Dismiss)* other available information about their sex, this undermines any purported state interest in using birth certificates to identify people—as well as undermining confidence in documents themselves. And by permitting transgender people to have accurate sex markers on some state-issued identity documents but not on others, Oklahoma is, if anything, creating a potential fraud problem—not solving one. Forcing Plaintiff to carry and produce mismatched, inaccurate identity documents also increases the likelihood that Plaintiff will trigger false alarms of potential fraud, thereby exposing her to unnecessary, invasive scrutiny and potential discrimination, while wasting law enforcement resources. Finally, the Policy also undermines any interest in public safety by exposing Plaintiff to violence. See Arroyo Gonzalez, 305 F. Supp. 3d at 333. Even if Defendants had met their burden of producing actual evidence supporting any of their purported rationales, these fail any level of constitutional scrutiny.

## DEFENDANTS VIOLATE PLAINTIFF'S CONSTITUTIONAL
## RIGHTS - FIRST AMENDMENT

### Amendment I to the United States Constitution

> Congress shall make no law respecting an establishment
> of religion, or prohibiting the free exercise thereof; or
> abridging the freedom of speech, or of the press; or the

right of the people peaceably to assemble, and to petition

the government for a redress of grievances.

By denying Plaintiff and those like she the right to change her birth certificate to reflect her true gender, Defendants are denying her and others the right to freely speak about whom they are and to express that freely, openly and without hinderance. Having the ability to change one's gender marker and names is a clear form of written expression guaranteed to her under the 1st Amendment to the United States.

Defendants are hindering her free speech and expression by 1) Mandating illegal, cruel and humiliating requirements upon her for permanent, irreversible, sterilizing hormone therapy and surgery as prerequisites for amending her birth certificate and driver's license, and 2) Defendants 1-3 are further denying Plaintiff her right to free speech and expression by continuing forcing dehumanizing, humiliating, cruel and illegal notations of her amendments of her gender marker and names upon her birth certificate **(Plaintiff's Exhibit 8)**. How can Plaintiff truly speak freely as to who she is and express herself fully, when Defendants keep notations of her amendments on there to cruelly, maliciously and publicly announce to her – and the whole world – something completely different **(Plaintiff's Exhibits 8, 38)**? How is what the Defendants are doing any different than if, say, all of America's news programs were automatically dubbed over and subtitled with what

the Taliban wanted the words to come out as when heard by American listeners? The 1st Amendment to the United States Constitution is extremely clear about an individual's right to free speech, and Defendants are in clear violation **(Plaintiff's Proffered Expert Witness Testimony)**.

In addition, Plaintiff is a popular, well-known licensed minister who has married thousands of couples from all over the United States for many years **(MC-2014-647, Oklahoma County)**. Her church and religious principles and ministry dictate that all persons should have the right to express their true gender and sexuality without hinderance. Indeed, many LGBTQIA+ individuals specifically seek her out as their minister because she is very accepting, tolerant, and has a very loving attitude toward they.

By forcing Plaintiff to become permanently sterilized, Defendants 1-4 have caused her irreparable harm that has forever made her unable to reproduce and delayed her initial legal name and gender marker changes. In addition, Defendants 1-3 have continued to keep dehumanizing notations of these amendments on her birth certificate. In addition to her other contentions, Plaintiff has a 1st Amendment right to be free from discriminatory treatment which clearly violates her right to practice her protected religious beliefs of living freely in her true gender and sexuality as her religion accords. Defendants thus also 1-3 remain in continuous violation of her 1st Amendment rights, and the Courts cannot allow it. It is the same

guiding principal that allows members of the military such as chaplains not have to kill anyone and for citizens to forego being forced to have a mandatory COVID-19 vaccination on religious grounds.

In addition, when Defendants 1-3 make amendments to any part of a birth certificate for people who are transgender/non-binary/gender non-conforming/gender-fluid, its policy is to indicate which field of the birth certificate was amended in multiple locations. The inclusion of a prior typically male legal name on the birth certificate of females who are transgender like Plaintiff reveals her transgender status. If the Defendants 1-3 were to amend Plaintiffs' gender markers but indicate on the amended birth certificate that an amendment to that provision was made, that would also disclose their transgender status to anyone to whom they present their birth certificates.

The Defendants' policies of i) refusing to issue gender marker changes for transgender people without permanent, irreversibly sterilizing hormones and surgery and ii) refusing to issue a transgender person an amended birth certificate without revealing a person's transgender status through indications of amendments, erect multiple barriers to the full recognition, participation, and inclusion of transgender people in society and subject them to discrimination, privacy intrusions, harassment, humiliation, stigma, harm to their health, and violence.

These policies violate federal constitutional guarantees, including the rights to equal protection, due process, and freedom from compelled speech. As confirmed by the practices adopted by other states, there is no government justification to support Defendants' refusal to provide transgender people with birth certificates that match their gender and do not otherwise reveal their transgender status.

## ADDITIONAL FACTS & BACKGROUND INFORMATION REGARDING THE FIRST AMENDMENT RIGHTS OF HUMANS WHO ARE TRANSGENDER

Transgender people are people who have a gender identity that differs from the sex assigned to them at the time of their birth. Gender identity is a well-established medical and psychological term that refers to a person's fundamental, internal sense of their gender. It is a core characteristic of human identity that everyone possesses. Gender identity is innate and typically fixed at an early age.

A person's gender identity cannot be voluntarily altered. Attempts to change a person's gender identity in order to align it with the person's birth-assigned sex are not only futile but incredibly dangerous to the individual, subjecting them to psychological harm, and increased risk of suicide and self-harm.

The gender marker designated on a birth certificate at the time of birth is almost always based solely on the appearance of an infant's external genitalia.

However, it is wellestablished among medical professionals that a person's sex is determined by a variety of components, including genitalia, chromosomes, hormones, reproductive anatomy, secondary sex characteristics, and gender identity.

When components of sex, including genitalia, chromosomes, hormones, reproductive anatomy, secondary sex characteristics, and gender identity, do not align as all typically male or all typically female, a person's gender identity is what determines the gender a person lives as, and how the person should be recognized for social and legal purposes.

Many transgender people experience gender dysphoria. Gender dysphoria is a medically recognized condition defined by a marked incongruence between a person's gender identity and the sex they were assigned at birth, when accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.

The well-accepted standards of care for the treatment of gender dysphoria, set forth by the World Professional Association for Transgender Health, seek to help a person live in accordance with their gender identity, which alleviates the distress associated with gender dysphoria.

Treatment typically involves social transition and can include medical treatments, including hormone therapy and surgeries, to bring a person's body into

alignment with their gender identity. These standards of care are recognized by all of the major medical and mental health professional organizations in the United States.

Social transition entails living one's life consistently with one's gender identity, such as changing clothing and hairstyle, name, and pronouns, using gender-specific facilities and engaging in gender-specific activities that match one's gender, and using identity documents with a gender marker that reflects one's gender.

The global medical community and the major medical associations in the United States recognize the critical and often life-saving benefits to the health and wellbeing of transgender people when they are able to live consistently with their gender identity in all aspects of their lives.

Forcing transgender people to use identity documents that do not match their gender identity, or to go without identity documents, is inconsistent with medical protocol because it prevents a person from fully living consistently with their gender identity. The Need for Birth Certificates That Match One's Gender and Do Not Disclose One's Transgender Status

A birth certificate is an essential government-issued document that each person uses to establish their identity throughout their lifetime. That is why the government routinely makes copies of a birth certificate available to the person

named on the birth certificate, rather than merely reserving the document solely for the government's use.

Transgender people are no different than non-transgender people with respect to the need to access a birth certificate that reflects who they are and that they can actually use in their lives. Additionally, for transgender people who have struggled for years with the impact of external invalidation of their gender identity, the knowledge that one's identification documents label them with the wrong gender and the name given to them at birth (if typical of their birth-assigned sex) can cause serious psychological injury and undermine their medical treatment for gender dysphoria.

Many transgender people are perceived by others consistent with their gender identity. This is especially so for transgender people who have received gender-affirming medical treatments to align their bodies with their gender. For example, hormone therapy affects secondary sex characteristics, which involve the skeletal structure, fat distribution in the body, skin texture, facial hair, and voice, among other things. In addition, surgeries are available to further bring a person's body into alignment with their gender. For many transgender people who have received these types of gender-affirming medical care, nothing about their outward appearance would indicate that they are transgender.

A transgender female born in Oklahoma who has a birth certificate designating him as male is burdened with an identity document that conflicts not only with his gender but also with how others perceive him. Similarly, a transgender man born in Oklahoma who has a birth certificate designating him as male is burdened with an identity document that conflicts not only with his gender but also with how others perceive him.

Denying transgender people birth certificates that match their gender identity and that do not reveal their transgender status discloses private information in contexts where this information would otherwise remain undisclosed, regardless of a person's desire not to disclose that personal information. Transgender people denied birth certificates that reflect their gender and that do not reveal their transgender status are deprived of significant control over the circumstances surrounding the disclosure of their transgender status, including when, where, how, and to whom their transgender status is disclosed.

A person's transgender status is profoundly personal information in which a transgender person has a reasonable expectation of privacy. Involuntary disclosure of that information can also put a person at risk of harassment, discrimination, and bodily harm.

Transgender people often face significant harmful treatment when others learn that they are transgender. A 2016 survey of over 27,000 transgender people across the country found that the transgender community is more likely to suffer abuse, harassment, discrimination, and violence than the population at large. 36. According to the Report of the 2015 U.S. Transgender Survey (2016) ("USTS"): 3 a. Around a quarter (24%) of respondents had been physically attacked in a K-12 school because people perceived them as transgender. b. In the year prior to completing the survey, 27% of respondents who had a job reported being fired, denied a promotion, or experiencing some other form of mistreatment in the workplace due to their gender identity or expression. c. Nearly half (47%) of respondents had been sexually assaulted during their lifetime. d. Among respondents who had interacted with police, 58% of those whom the police perceived as transgender experienced some form of mistreatment. 3 Sandy E. James et al., The Report of the 2015 U.S. Transgender Survey (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf ("USTS").

Thirty-nine percent of respondents experienced serious psychological distress in the month prior to completing the survey, compared with only 5% of the U.S. population. f. Forty percent of respondents attempted suicide in their lifetime—nearly nine times the attempted suicide rate in the U.S. population (4.6%).

The findings of the USTS reflect the lived reality of many transgender people across the country and demonstrate the significant danger to the health and safety of transgender people that results when their transgender status is involuntarily disclosed.

The USTS specifically examined the experiences of transgender people whose identity documents, including birth certificates, did not state a name and gender that align with their gender identity and presentation. Of those respondents, 32% reported being harassed, denied services, and/or attacked.

The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. This proscription is made applicable to the states through the Fourteenth Amendment. U.S. CONST. amend. XIV.

## The First Amendment protects the right to speak and to refrain from speaking:

The Defendants' policy of refusing to issue transgender people birth certificates with corrected gender markers and their policy of refusing to issue transgender people amended birth certificates that do not reveal their transgender status through indications of amendments violate the First Amendment rights of the Plaintiffs to refrain from speaking by compelling them to disclose private

information about their transgender status to each person that sees their birth certificates.

The Defendants' policy of refusing to issue transgender people birth certificates with corrected gender markers and their policy of refusing to issue transgender people amended birth certificates that do not reveal their transgender status through indications of amendments further violate the Plaintiff's First Amendment rights to refrain from speaking by forcing them to identify themselves with a gender and a name that fundamentally conflict with the core of who 25 they know themselves to be. Pursuant to these policies, Defendants condition Plaintiffs' ability to equally participate in society on their endorsement of the government's beliefs about the Plaintiffs' own genders.

The Defendants' policy of refusing to issue transgender people birth certificates without permanently, irreversibly sterilizing hormone and surgery beforehand, as well as making notations of the gender and name amendments on the amended birth certificates once they have gone through the permanently and irreversibly sterilizing hormones and surgery additionally violate the Plaintiffs' First Amendment right to speak by preventing them from expressing their gender in any circumstance in which they must present a birth certificate.

The Defendants' policy of refusing to issue transgender people birth certificates with corrected gender markers and their policy of refusing to issue transgender people amended birth certificates that do not reveal their transgender status through indications of amendments do not further any compelling (or even legitimate) state interest, nor are Defendants' policies narrowly tailored or the least restrictive method to promote a state interest.

Accordingly, Defendants are liable for violating the Plaintiffs' First Amendment rights to freedom of speech, pursuant to 42 U.S.C. § 1983, and Plaintiffs are entitled to declaratory and injunctive relief against Defendants declaring their policies of refusing to issue transgender people birth certificates with corrected gender markers and names (Defendants 1-4) and refusing to issue transgender people amended birth certificates that do not reveal their transgender status through indications of amendments unconstitutional and enjoining their enforcement (Defendants 1-3).

Now *Chief Federal Judge David Russell's* court ruling in 1983 (*Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88 (W.D. Okla. 1983)) specifically backed the plaintiff's rights of free speech and expression with her birth certificate, as it does now with Plaintiff's claims in this case. Indeed, federal Judge David Russell stated:

Oklahoma City Manager and bigot Scott Johnson in 1983 tried to block drag queens from performing at the Myriad Convention Center's Great Hall for no reason other than Johnson himself was a self-entitled, arrogant, pompous jerk. **However, now _Chief Justice David Russell_ of the United States District Court for the Western District of Oklahoma rules against Johnson, quoting Voltaire, "I may disapprove of what you [Plaintiff] say, but I will defend to the death your right to say it." Indeed, in _Norma Kristie, Inc. v. City of Oklahoma City_, 572 F. Supp. 88 (W.D. Okla. 1983) now _Chief Justice David Russell_ went on to chastise Johnson by saying:**

> **While this Court may agree that such a 'pageant' may not rise to the level of artistic endeavor that 'Hair' or "La Cage aux Folles' represent, it is still expression . . .**

**and is thus protected by the First Amendment _(Plaintiff's Exhibits 56, 71)_.**

**In _Norma Kristie, Inc. v. City of Oklahoma City_, 572 F. Supp. 88 (W.D. Okla. 1983) n ow _Chief Justice David Russell_ also chastised the defendants in that court ruling of his, going on to say:**

> **The First Amendment is not an art Critic . . . the First Amendment values free and open expression, even if it is distasteful to the majority, including personally distasteful to this court [sic]. Whether the pageant is an open expression of homosexuality is irrelevant . . . in view of acclaimed performances by Dustin Hoffman, Julie Andrews, Flip Wilson, Harvey Korman, Tony**

Curtis and Milton Berle in the roles of female impersonators, such representations may not be necessarily equated homosexuality *(Plaintiff's Exhibits 56, 71)*.

Now *Chief Justice David* chastised Johnson, once again in *Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88 (W.D. Okla. 1983) whom he said:

> . . . made no effort to follow the clear dictates of the U.S. Supreme Court, even after discussion with legal counsel . . . Instead, in the face of clear-cut mandates, Defendant Johnson unilaterally rejected the application [of the plaintiff] without investigation and based only on his own [bigoted and completely biased] opinion *(Plaintiff's Exhibits 56, 71 )*.

> Prior restraints on expression [including birth certificates and drivers' licenses, as in this present case] come before the courts bearing a heavy presumption against their constitutional validity. The Supreme Court in *Conrad* reiterated the rule that the "presumption against prior restraints is heavier and the degree of protection broader than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law; a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." 420 U.S. at 559, 95 S. Ct. at *1246 (Plaintiff's Exhibits 56, 7), (Excerpt in ruling from now Chief Justice David L. Russell)*.

Defendants 1-4 in Plaintiff's case are clearly doing the exact same thing: Thumbing their big, long, booger-filled noses in the face of bigoted, unconstitutional law and even an absence of law and authority, instead of following the dictates of the United States Constitution. All Defendants 1-4 are absolutely no better than the defendant in the case now *Chief Judge David Russell* had to chastise in 1983 in *Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88 (W.D. Okla. 1983) and are doing the exact same illegal thing – interfering with Plaintiff's rights of free speech and expression to speak and not to speak – which is exactly what changing her names and gender free of illegal amendment notations and without being forced to become permanently and irreversibly sterilized is.

**In his esteemed decision in *Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88 (W.D. Okla. 1983), now *Chief Justice David Russell* went on to assert:**

> **Providing wholesome entertainment is an admirable motive, but government officials at all levels must shoulder the responsibility of following the law and upholding the Constitution, even when doing so is unpopular *(Plaintiff's Exhibits 56, 71)*.**

History will not judge Defendants 1-4 and those who support their views and hateful actions kindly. Younger generations who have had access to the Internet and higher levels of education have generally gained a level of unprecedented wisdom and knowledge unlike that of no other previous generation of humans. Defendants'

children and grandchildren will look back with Defendants' actions in this matter with disgust and repulsion, as will their friends and their own kids and grandkids.

## DEFENDANTS VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS - NINTH AMENDMENT

### Amendment XI to the United States Constitution

> The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Plaintiff asserts that Defendants have no legal right to force people who are transgender to undergo irreversible and permanently sterilizing hormone therapy and surgery, prior to allowing her to change her name and gender markers on her birth certificate and driver's license (*Skinner v. Oklahoma* (1942), Equal Protection Clause, & other cases, laws and constitutional amendments as noted above). *Since the United States Constitution does not grant the government the right to forcibly sterilize Plaintiff and those like she or to choose her gender, names, etc., then that right rests solely with those people themselves.*

Plaintiff also asserts that Defendants have no legal right to make unlawful, degrading, dehumanizing notations of amendments to her birth certificate – or any legal document, for that matter – which out her as transgender against her will. The

notations to the amendments Defendants place upon Plaintiff's birth certificate do just that **(Plaintiff's Exhibits 4, 5, 8, 17, 20-25, 31, 35, 36, 37, 38, 55, 57, 58, 68, Plaintiff's Proffered Expert Witness Testimony)**. Once again, powers not clearly spelled in the United States Constitution thereby fall back to the people as their rights of self-determination. Plaintiff and those like she are neither citizens of and do not live in Iran, China, Malaysia, or Afghanistan; they cannot be treated as such by their own government. It's clearly unconstitutional and is expressly prohibited.

The Defendants do all of these things, despite the fact that they have absolutely no authorization to do so by any provision in the state or federal constitutions, federal or state laws, state or federal case law, or otherwise. Defendants have taken upon themselves to do such horrible things arbitrarily and capriciously to with the sole purpose of causing irreparable harm to Plaintiff that **(Plaintiff's Exhibits 4, 5, 8, 17, 20-25, 31, 35, 36, 37, 38, 55, 57, 58, 68, Plaintiff's Proffered Expert Witness Testimony).** Since Defendant has no legal law or provision to act in this manner, the right of Plaintiff and others like her to procreate and have legal documents which reflect only their true names and gender rests with and only with the bearers of those documents and no one else (*Skinner v. Oklahoma* (1942), Equal Protection Clause, & other cases, laws and constitutional amendments as noted above).

# DEFENDANTS POTENTIALLY VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS - EIGHTH AMENDMENT

## Amendment VIII to the United States Constitution

> "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This amendment prohibits the federal government from imposing unduly harsh penalties on criminal defendants, either as the price for obtaining pretrial release or as punishment for crime after conviction.

If Plaintiff were charged with a criminal act, she would probably find herself forcibly incarcerated in jail and prison with *men*. This is especially true, because her birth certificate reflects her previous name and gender marker that she was unlawfully assigned at birth when she was too young to consent. Defendants 1-3 refuse to change it, despite illegally and consistently oppressing all of her rights described herein and causing tremendous harm and suffering to Plaintiff and those of others in the transgender community.

Defendant 4 also forced her to be sterilized like Defendants 1-3, though they did not make notations of those amendments on her driver's license. Had there been

room to show notations of amendments on her driver's license, however, Defendants may likely have also done that as well.

Ideally, Plaintiff would be placed in a housing unit with other women, where she would be much safer from harm. However, there are many, many documented cases which exist **(Plaintiff's Exhibits 42-45, 57, 63, 68, Plaintiff's Proffered Expert Witness Testimony)** whereby women who were transgender were put against their will and usually illegally into jails with men. Then they have been raped multiple times, beaten, had their jaws and skulls fractured, and have often even been killed both by other inmates and the jail staff!

Is this really what Defendants desire for Plaintiff? Do they not have the foresight to see what could happen to her, given all the press and media about the horrors that women who are transgender have often faced while incarcerated? Have Defendants not seen what could happen to Plaintiff, or do they just lack empathy, understanding and compassion? ***Defendants do not have to like Plaintiff and other minorities like her having equal rights under the law, but as agents of the State they darn sure by law have to provide them.***

Plaintiff has a *vagina, breasts, long hair, big lips, and much more* ***(Plaintiff's Exhibits 26, 46, 47, 48)***. _If this Court denies Plaintiff's petition, then it will be complicit in allowing Defendants to continue to violate her VIII Amendment rights to cruel and unusual punishments. By keeping Plaintiff's previous name and gender

marker on her birth certificate *(Plaintiff's Exhibit 8)*, Defendants knowingly expose Plaintiff to all sorts of egregious harm and devastation that she need not otherwise suffer through, should she ever have to spend time in any jail or prison **(Plaintiff's Exhibits 42-45, 57, 63, 68, Plaintiff's Proffered Expert Witness Testimony)**. The United States Constitution was explicitly clear that this is illegal and violates the very moral fabric of everything America stands for.

## DEFENDANTS VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS - FIFTH AMENDMENT

### Amendment V to the United States Constitution

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process*

*of law; nor shall private property be taken for public use,*

*without just compensation.*

Defendants have wholly taken it upon themselves as gender vigilantes to deny Plaintiff of her right to procreate as a condition of getting a driver's license and birth certificate which reflect her proper names and gender. Indeed, Defendants 1-3 go even further and continue keep degrading, humiliating, illegal notations of amendments to Plaintiff's names and gender marker changes located on her birth certificate itself **(Plaintiff's Exhibit 8)**. Plaintiff's life clock is ticking: Defendants are depriving Plaintiff of her of her right to live – freely – with all the liberties enjoyed by her fellow cisgender humans. These are, namely, the right to procreate, live her life as she sees fit without hinderance with the family she desires, and to have all of her legal documents reflect only her true gender and names and be free of deleterious notations.

If Plaintiff ever wanted to go enroll in numerous private universities with hateful, bigoted anti-transgender admissions policies, her birth certificate that Defendants refuse to amend will automatically out her against her will **(Plaintiff's Exhibit 8, 49, Plaintiff's Proffered Expert Witness Testimony)**. Granted, private institutions will not always be allowed to be hateful and discriminate in such a way, because the courts will eventually take away their ability to hate and discriminate in

a *de jure* manner. However, right now private universities still have some legal protections to be hateful bigots, so we have to address it as it currently is.

Do Defendants really want Plaintiff to suffer harm by being outed against her will and thus be discriminated in such a manner, should she apply to certain universities? Surely being outed against her will would violate Plaintiff's Fifth Amendment to the United States Constitution? Where are Plaintiff's due process and rights in all of this? Defendants are clearly violating her right to privacy and due process by keeping notations of her previous name and gender marker on her birth certificate **(Plaintiff's Exhibit 8)**, which itself causes this harm **(Plaintiff's Exhibits 4, 5, 8, 17, 20-25, 31, 35, 36, 37, 38, Plaintiff's Proffered Expert Witness Testimony)**

Also, what if Plaintiff wishes to play sports at many private and public universities? She could be forced to be on a men's team, even though she has a vagina, large breasts, long hair, big feminine lips, is smaller in size/weight/stature than almost all men, and so much more **(Plaintiff's Exhibits 26, 46, 47, 48)**. Plaintiff is even smaller than a lot of other women *(Plaintiff's Exhibits 26, 46, 47, 48)*. How on earth could Plaintiff ever compete with other men?

Plaintiff also lacks the muscle mass to ever compete with and against men. If forced to do so because Defendants outed her, Plaintiff would almost surely get critically injured or killed, should she have to compete as such. Plaintiff has almost

no testosterone in her body, and her estrogen, progesterone and prolactin levels are as high or indeed even much higher than even other females **(See Plaintiff's Exhibit 50)**. This serves as yet another of numerous critical reasons why Plaintiff cannot afford to get outed as transgender by transgender against her will by Defendants.

Additionally, Plaintiff has found herself accosted on numerous occasions for using the women's restroom, even though she herself is female **(Plaintiff's Proffered Witness Testimony – Isabella Keefe)**. From security guards at the mall to the courthouse to people complaining that she was using a women's locker rooms at various gyms **(Plaintiff's Gym Witnesses)**, transitioning has been no easy task.

Indeed, the women's only gym Plaintiff tried to get into earlier in 2016 would not even grant her admittance, until Defendants finally chose to update her gender markers on her driver's license, birth certificate and passport **(Plaintiff's Gym Witness)**. However, Plaintiff could not get her gender marker changed in a timely fashion until Defendants were responsible for forcibly, irreversibly and permanently sterilizing her through mandated hormones and surgery. This delay caused Plaintiff a tremendous amount of stress, anxiety and emotional pain and suffering.

Other people who are transgender have experience similar discrimination at gyms, and they have been awarded large sums of money because of it **(Plaintiff's Exhibit 59)**.

Even now, if a gym pushed Plaintiff and required that she show a birth certificate as a condition for admittance, then Plaintiff would find that Defendants had once again outed her against her will as assigned male at birth (AMAB) against her will and without her express consent. Upon viewing the notations on her birth certificate, Plaintiff might even be forced to use a men's locker room once more where men would have the opportunity to view her vagina and breasts without consent. ☹

Plaintiff is lesbian; her brain was wired for an attraction to women that she can never change. Indeed, she has an extra beautiful, extra sweet wifey, Vivien Keefe. Nevertheless, Plaintiff often finds that numerous men come up asking to date her and making all kinds of sexual advances, sexual assaults, sexual propositions, etc., to/upon her – despite wearing her engagement and wedding rings and clearly telling the men to leave her alone – *even as a minister officiating wedding ceremonies*. What on earth do Defendants think would happen, if gyms or schools forced Plaintiff back into locker rooms and/or gyms meant for men, because her birth certificate, driver's license, etc., showed the wrong name and/or gender?

Defendants clearly have not seen the number of cases of women who were transgender getting brutally murdered by men, when they found out that doctors had mistakenly assigned them the wrong gender at birth **(Plaintiff's Exhibits 51, 52, 53)** If Defendants have indeed seen these incidents in the news but lacked the empathy,

compassion, kindness and understanding to care, then they do not need to hold their current positions.

Once again, Defendants had and still have absolutely no legal authority to take the law into their own hands. No law, statute, case ruling, ordinance, or state or federal constitutional provision allowed them to put such burdensome requirements upon Plaintiff as the Defendants did. Plaintiff's own female friends who were also transgender could not even accompany Plaintiff into the women's-only gym, because they had refused Defendants' illegal actions of forcibly irreversibly and permanently sterilizing themselves through hormones and surgery **(Plaintiff's Female Friend Who Are Transgender's Testimony)**.

Instead, Defendants have taken it upon themselves to arbitrarily, capriciously and with great malice deny Plaintiff the right to procreate and to live her life to the fullest extent possible. They have illegally and cruelly modified her legal documents, at least one of which is her own property, without due process and with absolutely no laws whatsoever to justify their actions. Instead, Defendants are inflicting this havoc upon Plaintiff because, so far, no one in Oklahoma has ever tried to stop them or call them out on their . . . nonsense. Defendants have never before been forced to be nice, until now. Their position is essentially like that of any other bully to whom no one stands up: "Make me!"

Defendants have, for the aforementioned reasons, absolutely deprived Plaintiff of her rights guaranteed to her and every citizen of our great nation under the United States Constitution for due process, as noted below:

> . . . nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

With their cruel and unjust actions, Defendants have withheld Plaintiff's dignity as a woman, have kept her from living her life, and have deprived her of property and legal documents who truly and accurately reflect who she really is.

## *PLAINTIFF WILL LIKELY SUCCEED ON HER CLAIMS, AND THE DEFENDANTS KNOW IT*

The Defendants know good and well that Plaintiff is likely to succeed with her claims. That is why their final response only had two (2) pages of material in it and it is also why they assigned three (3) experienced, licensed attorneys to the case (natalie.jones@oag.ok.gov, kindanne.jones@oag.ok.gov, kevin.mcclure@oag.ok.gov) vs. one (1) pro se/non-lawyer litigant (Plaintiff). It is the same logic and reasoning behind having a large number of backup singers for the main singer vs. having fewer or none at all – the main singers with numerous backup singers, like Defendants' contentions, are horrible, awkward, and deafening to the ears.

Defendants are trying to take advantage of this Court, because they know that if Plaintiff's relief is not granted at the district level then the 10th Circuit Court of Appeals and/or the LGBTQIA+-friendly United States Supreme Court most likely will. Plaintiff has already indicated numerous times that she can and will absolutely appeal any adverse decision, and the higher court's ruling will thus make Plaintiff's rights apply to even *more* states and jurisdictions – perhaps settling the matter once and for all, if it reaches and LGBTQIA+-friendly United States Supreme Court and thus making Plaintiff's wishes and indeed *rights* the permanent law of the *land for everyone*. By not granting Plaintiff's legal rights to her as noted in numerous federal and state case laws, federal and state statutes, and the United States Constitution, this Court will only waste more money and time on everyone's part, when there are other issues like education, health care, and the environment that need our immediate attention.

There is absolutely no law whatsoever which grants Defendants the authority to forcibly and permanently exterminate/sterilize Plaintiff (Defendants 1-4), nor to forcibly out her and others like her against their will by making notations of her name and gender marker changes on her birth certificate (Defendants 1-3) – none, zilch, zip, nada. Even if such a law did exist, and it does not, Plaintiff has provided an overwhelming incredible number of laws and provisions which without a doubt show that such a law would be totally illegal. Defendants did not even bother

responding to ***any of Plaintiff's laws and contentions***, despite her repeated demands that they do so. They did not respond, because they knew and still know they are terribly in the wrong. Thus, Defendants' lack of response indicated their agreement.

Furthermore, the Real ID Act does currently require gender to be shown on a driver's license. However, it absolutely does not ever, anywhere in the text of the bill, state that states must forcibly and irreversibly sterilize the transgender/non-binary/gender non-conforming/gender-fluid communities, prior to them receiving names and gender marker changes. It also does not ever require notations of those amendments to be made to any legal documents whatsoever, as Defendants 1-3 bogusly claim.

Defendants claimed multiple times that, "Plaintiff has [sic] already transitioned, [sic] therefore she has no 'personal stake' in this lawsuit." However, this fraudulent claim is inane for multiple reasons. Plaintiff shall elucidate further.

Firstly, Plaintiff has not finished transitioning, as she was actually in Portland, Oregon with Dr. James Thomas just last December while working on this case **(Plaintiff's Exhibit 87)**. Dr. Thomas has performed 2 surgical laryngoplasties with anesthesia over the last four and a half (4.5) years of treatment, plus one non-anesthetic surgery to remove a plate from her throat from the first surgery. Dr. Thomas also had to perform 4 extra adjustments to her voice by inserting a laser up her nose and down her throat, so as to reduce huskiness Plaintiff kept experiencing.

Also, Plaintiff has further body work scheduled with Dr. Courtney Caplan. Dr. Caplan was the physician whom Defendant 4/OKDPS/Tim Tipton forced to write a letter stating that Plaintiff had had the required surgery, prior to allowing her to change her gender marker on her driver's license. Defendant 4 did not even care about a court order and would not even accept one; they wanted a letter from the doctor herself to satisfy their extermination requirements that Defendant 4 – and indeed Defendants 1-3 as well – had cruelly forced upon Plaintiff **(Plaintiff's Exhibit 88)**.

At no time was Plaintiff *ever* given a "choice" as to whether or not to have permanently and irreversibly sterilizing hormones and surgery, prior to getting her name and gender marker changed. These were sad, absolute and totally illegal requirements forced upon Plaintiff by all Defendants. Saying otherwise on the part of Defendants is categorically false and constitutes outright *libel*.

Even so, Defendants *did* cause great harm to Plaintiff, because Defendants 1-3 still forcibly out her against her will by disclosing protected, private information by making notations of her names and gender marker changes on her birth certificate for the whole world to see.

Likewise, all Defendants have forced Plaintiff to be forever sterilized and thus unable to procreate. Plaintiff has since remarried, after coming out as transgender, because her now-ex-wife was not lesbian/bi-sexual/pansexual. Plaintiff has a new

wife now who is twenty-one years old. Plaintiff and her new wife wish to have biological children together, but how is that supposed to happen after Defendants have pre-emptively forced Plaintiff's future babies into murderous death camps of entropic non-existence? Defendants' actions are concomitant with those of Adolph Hitler.

Defendants would have this Court believe that "common sense" and "judicial experience" suffice to allow it to blatantly ignore all of the numerous rights Plaintiff has had to point out to Defendants that she does indeed have. If this Court uses its common sense and judicial experience, then it will definitely rule in favour of Plaintiff. If not, then the 10th Circuit Court of Appeals or the very-LGBTQIA+-friendly will most likely use their own common sense and extensive judicial experience to rule in favour of Plaintiff.

Also, Plaintiff's records are anything but confidential as Defendants had tried to claim, because as she noted on numerous occasions a birth certificate is used in a large number of reasons. Some of those reasons are as follow:

a) **Applying for a Passport**

b) **Applying for Social Security or Other Government Benefit**

c) **Replacing a Social Security Card**

d) **Enrolling in School**

e) **Joining the Military**

f) **Proving Genealogy (i.e., Native American Tribes)**

g) **International Purposes** (i.e., Visas, Marriage Licenses, USCIS/Immigration – Which Plaintiff has had to do and has had to Show the \*Humiliating\* Amendments to Others When Applying for her Wife's Green Card ☹)

h) **Enrolling in Sports Activities**

i) **Identifying Yourself in Court**

j) **For Employment Eligibility Purposes**

k) **As a General ID**

l) **For Determining Which Jail an Inmate in Placed in by His/Her/Their Gender**

m) **Many, Many Other Occasions**

Really? A birth certificate is truly "private" as Defendants erroneously claim? Private, eh? If that is true, then Plaintiff has a bridge to sell this Court.

In addition, Plaintiff has previously claimed her rights under the Tenth Amendment to the United States Constitution: Powers Reserved to the People. Plaintiff has already addressed how the federal and state governments have already prohibited Defendants' discriminatory actions via state and federal case laws, state and federal statutes, and, of course, the United States Constitution. Remember? They are the ones Defendants never bothered contesting or even responding to.

Nevertheless, even if those were not in place/did not exist, Plaintiff would *still* be granted the constitutional power and authority to determine her own name, gender, the right to keep her matters private, and whether or not to procreate vis-à-vis the Tenth Amendment to the United States Constitution.

As Plaintiff previously stated time and time again, Defendants have claimed that by forcibly outing Plaintiff against her will, violating her privacy, and making her forever unable to reproduce offspring, they were "just following the law" as "innocents." Once again, if the Court were to believe this - malarky – then Plaintiff has a bridge to sell it. At the Nuremburg Trials, the Nazis made the same claims of defense to their gassing, shooting, starving, burning, and outright purging and murdering Jews, homosexuals, persons with disabilities, Communists, trade unionists, intellectuals, Catholics, etc.: "I was just following orders." Sadly, this claim falls at the absolute lowest level of societal moral reasoning **(Plaintiff's Exhibit 89).**

## CONCLUSION

Based on the foregoing, no material fact is in dispute and Plaintiff is entitled to judgment as a clear and convincing *matter of law*. Plaintiff asks this Court to strike down Defendants' Policies & Title 63 O.S. § 1-321 as unconstitutional as-applied toward humans who are transgender and to permanently ban Defendants and other government-run agencies from ever mandating forced, permanently, sterilizing

surgery, prior to changing the gender markers and names of people who are transgender/non-binary/gender non-conforming/gender-fluid – and to also ban illegal, harmful, degrading notations of those amendments on any government documents – and to simply allow people who are transgender to obtain the accurate birth certificates that they need to live their lives in peace and harmony.

**RESPECTFULLY SUBMITTED this 19th day of January, 2022.**

s/Dr. Tinsley Ariana Taylor Makayla Saramosing
Pro Se
21985 Homesteaders Road
Deer Creek, Oklahoma
73012
405-593-3515 - Telephone
Email: MakaylaSaramosing@Gmail.com

## CERTIFICATE OF SERVICE

I certify that on January 19, 2022, I filed the foregoing electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dr. Tinsley Ariana Taylor Makayla Saramosing
Pro Se
21985 Homesteaders Road
Deer Creek, Oklahoma
73012
405-593-3515 – Telephone
Email: MakaylaSaramosing@Gmail.com