IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TINSLEY ARIANA TAYLOR M. SARAMOSING, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. CIV-21-1152-PRW |
| KEVIN CORBETT, et al., ) ) | |
| Defendants. ) | |

**ORDER**

Before the Court is Defendants' Motion to Dismiss (Dkt. 19). For the reasons that follow, the Motion (Dkt. 19) is **GRANTED**, and Plaintiff's Amended Complaint (Dkt. 8) is **DISMISSED**.

*Background*

Plaintiff Tinsley Ariana Taylor M. Saramosing is "a female who is transgender and has medically and socially transitioned."[1] Her Complaint raises a variety of claims regarding the State of Oklahoma's requirements for a legal gender marker and name change on an individual's government documents and the presence of notations on government

---

[1] Am. Compl. (Dkt. 8), at 13. At this stage, the Court accepts all well-pleaded allegations in Plaintiff's Complaint as true and views those facts in the light most favorable to Plaintiff. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). And because Plaintiff is proceeding *pro se*, the Court construes her filings liberally without serving as her advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

documents signifying that amendments have been made.[2] Plaintiff argues that these requirements violate a variety of federal constitutional and statutory provisions and seeks both equitable relief and monetary damages.[3]

Plaintiff has completed the requirements for a legal gender marker and name change under Oklahoma law and has "had both legal name and gender marker changes made to her driver's license, passport, birth certificate and social security card."[4] She argues, however, that she is entitled to seek relief for the past harm she experienced going through those processes and future harm caused by the presence of notations on her birth certificate signifying that amendments were made.

Plaintiff's Complaint also discusses (at length) the experience of "others who are transgender/non-binary, gender non-conforming, gender fluid, etc.,"[5] and are allegedly injured by the same requirements for a legal gender marker and name change under Oklahoma law and the presence of notations on state government documents. She asks this Court to allow her to pursue relief on behalf of these unidentified third parties as well.

Defendants, a variety of state officials sued in their official capacity, moved to dismiss. They argue, among other things, that Plaintiff lacks Article III standing to assert her various claims and seek relief on behalf of herself and others.

---

[2] All references to the "Complaint" are to Plaintiff's Amended Complaint (Dkt. 8).

[3] *See* Am. Compl. (Dkt. 8), at 101–105 (providing Plaintiff's request for relief).

[4] *Id.* at 13.

[5] *See, e.g., id.* at 102.

*Legal Standard*

The federal judiciary's power "begins and ends with the need to adjudge the rights of an injured party who stands before" a court seeking redress for an injury that the court is capable of redressing.[6] That is because Article III of the federal Constitution limits the federal judicial power to "Cases" and "Controversies" at "Law and Equity."[7] "For there to be such a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue."[8] Rather, "the plaintiff must have a 'personal stake' in the case—in other words, standing."[9] To establish standing, the plaintiff bears the burden to show "(i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief."[10] These three elements must be met "for each claim" a plaintiff presses and "for each form of relief that they seek."[11]

Standing is more than a technical, box checking requirement. It "is a crucial component of the separation of powers between the co-equal branches of our government. It is what keeps our non-political branch out of the business of resolving policy disputes."[12]

---

[6] *United States v. Windsor*, 570 U.S. 744, 781 (2013) (Scalia, J., dissenting).

[7] U.S. Const. art III, § 2, cl. 1.

[8] *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013).

[9] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

[10] *Id*.

[11] *Id.* at 2208.

[12] *Hunsucker v. Fallin*, 408 P.3d 599, 616, *as modified* (Okla. Dec. 20, 2017) (Wyrick, J., concurring in part & dissenting in part). *See Hollingsworth*, 570 U.S. at 700 ("[Standing] is an essential limit on our power: It ensures that we act *as judges,* and do not engage in

*Discussion*

Plaintiff's Complaint alleges two categories of harm allegedly caused by Defendants that she argues give her standing to seek the relief she requests in this case: (1) past and future harm to others and (2) past and future harm to herself. But these alleged injuries are insufficient to establish Article III standing.

I.  *Alleged Harm to Third Parties.*

Start with the past and future harm to third parties. It is "a fundamental restriction on [a federal court's] authority that in the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."[13] To be sure, "[t]here are 'certain, limited exceptions' to that rule,"[14] but Plaintiff has provided no argument as to how those exceptions exist here, and the Court sees none.[15]

Much of Plaintiff's argument as to her ability to seek relief on behalf of third parties boils down to her commitment to the cause she seeks to vindicate and its importance to

---

policymaking properly left to elected representatives." (emphasis in original)); Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881 (1983).

[13] *Hollingsworth*, 570 U.S. at 708 (cleaned up).

[14] *Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

[15] The Supreme Court has generally limited third-party standing to instances where the litigant themselves also has suffered an injury on their own sufficient to confer Article III standing. *See Hollingsworth*, 570 U.S. at 707–09. *Cf. Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."). But as explained below, Plaintiff has not alleged facts sufficient to establish Article III standing on her own behalf.

other persons who have been subjected to the state requirements at issue or will be in the future. But "Article III standing is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests."[16] Neither deep commitment to an issue nor zealous advocacy is sufficient to create "a particularized interest sufficient to create a case or controversy under Article III."[17] Nor is it sufficient, as Plaintiff suggests, that she has an interest in ensuring that Defendants act lawfully in their dealings with third parties. The Supreme Court "has consistently made clear that an abstract interest in the government's 'proper application of the Constitution and laws' cannot alone justify Article III standing."[18]

Plaintiff remains free to lobby and attempt to persuade the State's political branches on how the State should treat the third parties whose rights she seeks to vindicate. And those third parties may very well have standing to pursue their own claims in an appropriate case. But Article III prohibits Plaintiff from asserting claims on their behalf in this case.

## II.     Alleged Harm to Plaintiff.

Plaintiff also claims that the state requirements at issue have inflicted and continue to inflict a variety of harms on her that are sufficient to confer standing for the relief she seeks.

---

[16] *Hollingsworth*, 570 U.S. at 707 (cleaned up). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (explaining that a plaintiff must show that they "would thereby be directly affected apart from their special interest in the subject" (cleaned up)).

[17] *Hollingsworth*, 570 U.S. at 707 (internal quotation marks omitted).

[18] Richard H. Fallon, Jr., et al., *Hart and Wechsler's The Federal Courts and the Federal System* 126 (7th ed. 2015) (collecting cases & quoting *Lujan*, 504 U.S. at 573–74).

A. *Past Harm to Plaintiff.*

Plaintiff first relies on past harm she personally experienced from having to fulfill the requirements for a legal gender marker and name change under Oklahoma law. But this past harm cannot confer standing because a dispute must "be capable of resolution through the judicial process."[19] And the dispute over these past harms experienced by Plaintiff is not capable of resolution through the judicial process because these injuries cannot "be redressed by judicial relief."[20] That is because neither form of relief Plaintiff seeks—injunctive relief and monetary relief—are available in this context.

Start with injunctive relief. Injunctive relief is a preventive remedy designed to address future harm. It cannot provide relief for past harm that is not likely to reoccur in the near future.[21] And because Plaintiff has already completed the State's process for both legal name and gender marker changes to her state documents, the Court cannot afford Plaintiff forward looking, injunctive relief.[22] There is no allegation in the Complaint that suggests there is "a real and immediate threat" that Plaintiff would again have to go through

---

[19] *Flast v. Cohen*, 392 U.S. 83, 97 (1968).

[20] *TransUnion*, 141 S. Ct. at 2203. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 107 (1998) (explaining that to have standing, a plaintiff must seek "an acceptable Article III remedy" that will "redress a cognizable Article III injury").

[21] *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

[22] *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

the state requirements she alleges are unlawful.[23] So, injunctive relief is therefore unavailable.

Nor may the Court award monetary damages for these alleged past harms.[24] That is because official capacity suits, like this one, are in effect suits against the state entity itself.[25] So absent waiver by the State or congressional abrogation[26]—and Plaintiff makes no argument that either exist here—sovereign immunity bars this Court from issuing monetary relief against Defendants, each of whom is a state official sued in their official capacity.[27]

B. *Future Harm to Plaintiff.*

Throughout her Complaint, Plaintiff alleges a variety of hypothetical future harms that she could incur that are allegedly traceable to Defendants' conduct. She seeks injunctive relief to remedy these harms, asking for a Court order requiring Defendants to remove the notations of amendments from her birth certificate. But these alleged risks of future harm are insufficient to create an injury to sustain a suit seeking injunctive relief. It's true that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," but only if "the risk of harm is

---

[23] *Id.* at 105.

[24] In her response, Plaintiff largely concedes that monetary relief is barred by sovereign immunity. *See* Pl.'s Resp. (Dkt. 20), at 2.

[25] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[26] This waiver can either be a function of current state law or the state's consent to such suits through adopting the federal Constitution. *See Torres v. Texas Dep't of Pub. Safety*, 142 S. Ct. 2455, 2462 (2022).

[27] *Graham*, 473 U.S. at 169.

sufficiently imminent and substantial."[28] This means that the harm cannot be conjectural or hypothetical.[29] And that is where Plaintiff's claims about future injury to herself fail.[30] Consider a few examples.

Noting discriminatory policies by "many other countries" towards transgender persons, Plaintiff speculates that "[i]f she went to many other countries and tried to get married, they would ask for her birth certificate."[31] And upon showing it, Plaintiff suggests that agents of the hypothetical country would discern from the notations on her birth certificate that she was transgender, and as a result, "would deny her the right to get married" and "would likely put her to death."[32] But Plaintiff alleges no plans to travel and get married in any of these unnamed countries.[33] And the Supreme Court has repeatedly rejected standing in cases, like this hypothetical, where the future harm alleged is based on a "speculative chain of possibilities" because such a harm is not "certainly impending."[34]

---

[28] *TransUnion*, 141 S. Ct. at 2210.

[29] *Lujan*, 504 U.S. at 560.

[30] There, of course, would be other standing problems with the theories of injury discussed below, including whether such harms inflicted by third parties would be fairly traceable to the Defendants in this case. *See Lujan*, 504 U.S. at 560. Plaintiff, after all, "bear[s] the burden of pleading . . . concrete facts showing that the defendant[s'] actual action has caused the substantial risk of harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). And she "cannot rely on speculation about the unfettered choices made by independent actors not before the court." *Id.* (cleaned up).

[31] Am. Compl. (Dkt. 8), at 40.

[32] *Id.*

[33] *See, e.g.*, *Lujan*, 504 U.S. at 563–64.

[34] *Clapper*, 568 U.S. at 414.

The "attenuated chain of inferences" necessary to find the harm Plaintiff alleges makes clear that such harm is not "clearly impending."[35]

Several of Plaintiff's other theories of injury suffer from the same defect. She speculates that if she "ever wanted to go enroll in numerous private universities with hateful, bigoted anti-transgender admissions policies, her birth certificate . . . will automatically out her against her will."[36] And if she "wishe[d] to play sports" at one of those universities after enrollment, the notations on her birth certificate may force her to play on a men's team.[37] But again, Plaintiff has alleged no concrete plans to seek enrollment in such a university, let alone play sports at one. And the fact that she may possibly do so in the future is insufficient to confer an imminent injury.[38] The same is true for her claim that if she "were charged with a criminal act," the notations on her birth certificate "would probably" result in Plaintiff being "forcibly incarcerated in jail and prison with men,"[39] and her hypothetical regarding a hypothetical gym that "required she show a birth certificate as a condition for admittance" and then took various adverse actions against her because of the notations on the certificate.[40] None of these are the type of

---

[35] *Id*. at 414 n.5.

[36] Am. Compl. (Dkt. 8), at 87.

[37] *Id.* at 88.

[38] *See Lujan*, 504 U.S. at 562–64.

[39] Am. Compl. (Dkt. 8), at 84–85.

[40] *Id.* at 90.

imminent risks of future harm that Plaintiff may pursue forward-looking, injunctive relief to prevent from occurring.[41]

### *Conclusion*

Accordingly, Defendants' Motion to Dismiss (Dkt. 19) is **GRANTED**, and Plaintiff's Amended Complaint (Dkt. 8) is **DISMISSED**.

**IT IS SO ORDERED** this 24th day of March 2023.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[41] *See TransUnion*, 141 S. Ct. at 2210; *Clapper*, 568 U.S. at 414. Various aspects of Plaintiff's Complaint also seem to suggest that the mere fact that she has notations on her birth certificate creates some type of harm actionable in federal court. But Plaintiff has provided no argument as to how that abstract stigmatic injury bears a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo v. Robbins*, 578 U.S. 330, 341 (2016)). And the Court has identified no "close historical or common-law analogue" for this type of injury. *Id.*